IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **DARIO RUBEN LALA BARROS,** § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | **CAUSE NO. EP-25-CV-488-KC** |
| § | |
| **KRISTI NOEM et al.,** § | |
| § | |
| Respondents. § | |

## ORDER

On this day, the Court considered Dario Ruben Lala Barros' Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 1. For the following reasons, the petition is **GRANTED IN PART**.

I.  BACKGROUND

This case involves Lala Barros' challenge to Respondents' decision to detain him in immigration custody without a bond hearing. The following facts are derived from the allegations in the Petition, the Response, ECF No. 5, and documentary evidence submitted by the parties.

A.  Arrival in the United States & Immigration Proceedings

Lala Barros is an Ecuadorian citizen who entered the United States in 2004 and has lived here for the past twenty-one years. Pet. ¶¶ 19–20, ECF No. 1. Lala Barros was initially arrested by local law enforcement for operating a vehicle under the influence of alcohol, and an immigration detainer was lodged against him. Resp. Ex. A ("Form I-213") 2–3, ECF No. 5-1. On September 26, 2025, Lala Barros was taken into custody by Immigration and Customs Enforcement ("ICE"), and he is now detained at the ERO El Paso Camp East Montana facility in

El Paso, Texas. Pet. ¶¶ 9, 12, 18. On an unspecified date, Lala Barros filed an asylum application, "which has been pending for numerous years." *Id.* ¶ 21. He is also eligible to apply for cancellation of removal. *Id.* ¶ 22. Lala Barros is a father of two with no criminal history, other than the arrest that led to his detention. *Id.* ¶¶ 22–23. He has not been given a bond hearing and claims he will not receive one without this Court's intervention. *Id.* ¶ 89. Lala Barros is scheduled for a hearing before an immigration judge on December 12, 2025. Resp. 2.

### B.  Procedural History

On October 22, 2025, Lala Barros filed a Petition for a Writ of Habeas Corpus, asking the Court to order his release or a bond hearing before an immigration judge. Pet. 43. In conjunction, Lala Barros filed a Motion for a Temporary Restraining Order ("TRO"), ECF No. 2, requesting his immediate release from ICE custody. The Court denied the TRO Motion but ordered that Respondents could not remove Lala Barros from the United States or transfer him from this Division and District during the pendency of the case. Oct. 22, 2025, Order, ECF No. 4. The Court also ordered Respondents to show cause why the application for a writ of habeas corpus should not be granted. *Id.*

Respondents then filed a Response. To the extent there are any factual disputes, the Court resolves them in Respondents' favor. Therefore, it is unnecessary to hold a hearing. *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted) (finding that although 28 U.S.C. § 2243 requires the court to "summarily hear and determine the facts," the court need not hold an evidentiary hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the legal implications of undisputed facts").

## II.     DISCUSSION

In his Petition, Lala Barros claims that (1) he is not subject to mandatory detention under 8 U.S.C. § 1225(b) and associated regulations, and (2) his continued detention violates his right to procedural due process under the Fifth Amendment.  Pet. ¶¶ 94–102.

Respondents make three arguments in opposition: (1) the Court lacks subject matter jurisdiction; (2) Lala Barros is subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b); and (3) Lala Barros is not entitled to any more process than what the statute provides.  Resp. 1–2.

This Court recently decided several petitions for writs of habeas corpus brought by immigration detainees challenging their mandatory detention without a bond hearing under § 1225(b).  *See, e.g.*, *Martinez v. Noem* ("*Martinez I*"), No. 3:25-cv-430-KC, 2025 WL 2965859, at *2 (W.D. Tex. Oct. 21, 2025); *Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); *Lopez-Arevelo v. Ripa*, --- F. Supp. 3d ----, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025).  Respondents rely on many of the same arguments that this Court has already addressed and rejected.  Where the arguments retread old ground, the Court need not repeat its analysis, especially where that analysis is consistent with "the overwhelming majority" of courts to consider these issues in recent months.  *See Buenrostro-Mendez v. Bondi*, No. 25-cv-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025).

### A.     Jurisdiction

First, Respondents argue that 8 U.S.C. § 1252(e)(3) strips the Court of jurisdiction to consider Lala Barros' habeas challenge to his detention.  Resp. 9–10.  Respondents argue that Lala Barros "seeks judicial review of a written policy or guideline implementing § 1225(b)" and such review "can be sought only in the District of D.C."  *Id.* at 10.

Section 1252(e) is titled "Judicial review of orders under section 1225(b)(1)" and the specific subparagraph, § 1252(e)(3), is titled "Challenges on validity of the system." It states:

> Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—
>
> (i) whether such section, or any regulation issued to implement such section, is constitutional; or
>
> (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3).

Section 1252(e)(3) is thus one among several jurisdiction channeling provisions in the INA, which "funnel judicial review" of a given issue "into a single mechanism." *See, e.g.*, *Lopez-Arevelo*, 2025 WL 2691828, at *3–4 (discussing other jurisdiction channeling provisions) (quoting *Duarte v. Mayorkas*, 27 F.4th 1044, 1051 (5th Cir. 2022)). This particular provision requires that "any challenge to the legality or constitutionality of any regulation implementing the expedited removal procedures of § 1225(b) must be made in the District Court for the District of Columbia." *Rodrigues v. McAleenan*, 435 F. Supp. 3d 731, 737 (N.D. Tex. 2020). In other words, the statute funnels systemic, "facial challenges to the expedited removal process" to the District of Columbia. *See id.* at 738 (citation omitted). As applied challenges, however, are left to the regional federal courts. *See id.*

Respondents do not reference any decision finding that § 1252(e)(3) bars a regional district court from considering a habeas corpus petition brought by a noncitizen like Lala Barros, who brings an as-applied due process challenge to his mandatory detention. Resp. 9–10. And many courts outside of the District of Columbia have held that such claims are not barred by

4

§ 1252(e)(3). *See, e.g.*, *Guerrero Orellana v. Moniz*, --- F. Supp. 3d ----, 2025 WL 3033769, at *5–6 (D. Mass. 2025); *Munoz Materano v. Arteta*, No. 25-cv-6137, 2025 WL 2630826, at *10 (S.D.N.Y. Sept. 12, 2025) (citation omitted); *Mata Velasquez v. Kurzdorfer*, --- F. Supp. 3d ----, 2025 WL 1953796, at *6 (W.D.N.Y. 2025); *Padilla v. U.S. Immigr. Customs Enf't*, 704 F. Supp. 3d 1163, 1170 (W.D. Wash. 2023). As one court explained, the Supreme Court has "rejected application of a similar jurisdiction-stripping provision to claims challenging the detention process for those facing removal." *Padilla*, 704 F. Supp. 3d at 1170 (citing *Jennings v. Rodriguez*, 583 U.S. 281 (2018)).

The Court finds these decisions persuasive, particularly in light of another Supreme Court decision earlier this year. In *Trump v. J.G.G.*, the Court held that claims brought by immigration detainees that "'necessarily imply the invalidity' of their confinement" "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." 604 U.S. 670, 672 (2025) (citations omitted). And for such "core habeas petitions, jurisdiction lies in only one district: the district of confinement." *Id.* (cleaned up) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). There, the plaintiffs were detained under the Alien Enemies Act in Texas but sought relief in the District of Columbia. *Id.* at 671. The Supreme Court held that the plaintiffs were unlikely to succeed in their claims because venue was only proper in Texas. *Id.* at 672.

Respondents' view of the law would place Lala Barros and those like him in a jurisdictional conundrum, between the rock of § 1252(e)(3) and the hard place of *J.G.G.* Lala Barros does not bring a systemic, facial challenge to § 1225(b) or its attendant regulations. Rather, he brings an as-applied due process challenge to his detention. Such claims of invalid confinement may only be raised through a petition for writ of habeas corpus. *J.G.G.*, 604 U.S. at 672. And because Lala Barros is detained in El Paso, Texas, his habeas petition must be heard

5

here. *See id.* In sum, Lala Barros' lawsuit is precisely where it belongs, and § 1252(e)(3) does not strip this Court of jurisdiction. *See id.*; *Padilla*, 704 F. Supp. 3d at 1170.

Next, Respondents argue that the Court is stripped of jurisdiction by 8 U.S.C. §§ 1252(g) and 1252(b)(9). Resp. 10. The Court already rejected essentially the same arguments. *See Santiago*, 2025 WL 2792588, at *3–5 (rejecting §§ 1252(g) and 1252(b)(9) arguments); *Lopez-Arevelo*, 2025 WL 2691828, at *4–5 (rejecting § 1252(g) arguments). In their briefing, Respondents fail to distinguish those prior jurisdictional analyses. Resp. 10.

Therefore, the Court finds that it has jurisdiction to consider Lala Barros' challenge to his detention.

### B. Statutory Interpretation

Next, the parties debate the merits of the Government's new and expansive interpretation of mandatory detention under 8 U.S.C. § 1225(b) and whether Lala Barros falls within it. Pet. ¶¶ 29–72; Resp. 2–9. Recently, courts across the country have held that this interpretation is either incorrect or likely incorrect. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 (noting that "almost every district court to consider this issue" has rejected the Government's new interpretation); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting twelve such decisions).

Nevertheless, the Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, Lala Barros is entitled to due process and succeeds in his as-applied challenge.

### C. Procedural Due Process

Respondents argue that Lala Barros "has not raised any colorable claim that mandatory detention under § 1225(b) is unconstitutional as applied to him." Resp. 1. They argue that, even

6

as a matter of due process, Lala Barros "is not entitled to more process than what Congress provided him by statute." *Id.* at 11. This argument relies on an expansive reading of *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). *See id.* at 11–13. The Court has already rejected such a reading. *See Santiago*, 2025 WL 2792588, at *7–10; *Lopez-Arevelo*, 2025 WL 2691828, at *7–10. And other courts have agreed with its analysis. *See, e.g.*, *Vieira*, 2025 WL 2937880, at *5.

Respondents also appear to argue that Lala Barros is receiving sufficient due process because he is in full removal proceedings, where "constitutional protections are built in[]." Resp. 11–12. However, the process Lala Barros has received in relation to his removal is entirely distinct from the process he has received in relation to his detention, and whether that process is sufficient under the Fifth Amendment.

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem* ("*Martinez II*"), No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v. Bostock*, No. 25-cv-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at 348).

### 1. Private Interest

As to the first element, "'[t]he interest in being free from physical detention' is 'the most elemental of liberty interests." *Martinez II*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Respondents' position appears to be that Lala Barros does not acquire a liberty interest until his detention becomes unreasonably prolonged. Resp. 12. However, one's physical freedom is a paramount liberty interest, secured not just by statute but by the Constitution. *Hamdi*, 542 U.S. at 529. This liberty interest applies to noncitizens, although to varying degrees. *Martinez v. Hyde*, --- F. Supp. 3d ----, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (citation omitted).

Therefore, this Court has already held that noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status. *Martinez I*, 2025 WL 2965859, at *4. And other district courts have done the same. *See, e.g.*, *Sanchez Alvarez v. Noem*, No. 25-cv-1090, 2025 WL 2942648, at *1, 7 (W.D. Mich. Oct. 17, 2025); *Chogllo Chafla v. Scott*, Nos. 25-cv-437, 438, 439, 2025 WL 2688541, at *1, 10 (D. Me. Sept. 22, 2025).

Lala Barros has been living in this country for twenty-one years, so "it cannot be denied that [he] was 'already in the country.'" *See Martinez v. Hyde*, 2025 WL 2084238, at *8 (quotations omitted). He has no criminal history, apart from his recent arrest, and he has established a family and a community here. Pet. ¶¶ 87–90. Thus, the first *Mathews* factor weighs in favor of Lala Barros.

### 2. Risk of Erroneous Deprivation

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which

8

alternative procedures could ameliorate these risks." *Martinez II*, 2025 WL 2598379, at *3 (quoting *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. May 21, 2025)).

Here, detaining Lala Barros without holding a bond hearing creates a substantial risk that he may be erroneously deprived of his liberty. Without an individualized determination, it cannot be said that detention is warranted in his case. This risk can be easily ameliorated through a bond hearing. Indeed, agency decisionmakers regularly "conduct[] individualized custody determinations . . . consider[ing] flight risk and dangerousness." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (citation omitted); *see also* 8 C.F.R. §§ 236.1(c)(8), 1003.19(h)(3). Under "decades of DHS's own practices" prior to 2025, noncitizens "who entered without inspection" and were later arrested, just like Lala Barros, received bond hearings. *Chogllo Chafla*, 2025 WL 2688541, at *8 (citations omitted). This is precisely the type of proceeding that would give Lala Barros an opportunity to be heard and to receive a meaningful assessment of whether he is dangerous or likely to abscond, and it would greatly reduce the risk of an erroneous deprivation of his liberty.

Respondents appear to argue that it is better for Lala Barros that he is detained because his underlying asylum application will be heard "more expeditiously on the detained docket than the non-detained docket." Resp. 12. Even if true, those procedures relate to Lala Barros' removal, not his detention, so they do not ameliorate the risk that he will be erroneously deprived of his liberty while his removability is assessed.

Therefore, the second *Mathews* factor weighs in favor of Lala Barros.

### 3. Government's Interest

Respondents only identify their general interest in enforcing immigration laws as their basis for seeking continued detention without a bond hearing. *See* Resp. 2. But again, assuming

9

Respondents' interpretation of the statute is correct, Lala Barros' constitutional interest in his liberty exists above and apart from the INA. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation omitted). Certainly, the Government has an interest in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community. But these concerns would be squarely addressed through a bond hearing. Thus, the third *Matthews* factor also weighs in favor of Lala Barros.

Because all *Mathews* factors support Lala Barros' position, the Court finds that his detention without an individualized assessment of flight risk and dangerousness deprives him of his constitutional right to procedural due process under the Fifth Amendment of the United States Constitution. Thus, he is entitled to a bond hearing. *See, e.g., Lopez-Arevelo*, 2025 WL 2691828, at *13.

### D.    Scope of Relief

A majority of courts, including this one, have determined that the appropriate relief for an immigration detainee held in violation of due process is to require a bond hearing before an IJ.[1] *Id.* at *12 (collecting cases). The weight of authority also holds that when ordering a bond hearing as a habeas remedy, the burden of proof should be on the Government to prove by clear

---

[1] Respondents argue that "the only relief available to Petitioner through habeas is release from custody." Resp. 2. Given that a majority of courts have granted such relief, *see Lopez-Arevelo*, 2025 WL 2691828, at *13 (collecting cases), and that district courts have flexibility in fashioning habeas remedies, *see Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005), the Court finds that it has the authority to order a bond hearing as a habeas remedy. *See also J.G.G.*, 604 U.S. at 672 ("[I]mmediate physical release [is not] the only remedy under the federal writ of habeas corpus.") (citation omitted). But even assuming Respondents are correct that the sole habeas remedy is release from custody, the Court's order is not simply for an IJ to hold a bond hearing. Rather, the Court orders that if an IJ refuses to timely convene a bond hearing, Lala Barros must be immediately released. In other words, the Court provides Respondents a final opportunity to give Lala Barros the process to which he is entitled under the Constitution. If they do so, then there is no longer a violation. If they do not, then the relief ordered is precisely what Respondents contend is available: release.

10

and convincing evidence that the detainee poses a danger or flight risk. *Id.* at *13 (collecting cases); *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.14 (2d Cir. 2010) (citations omitted). This is so "[b]ecause the alien's potential loss of liberty is so severe . . . he should not have to share the risk of error equally." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (citing *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 224 & n.12 (3d Cir. 2018)). Many courts have also found it appropriate to give the Government a short window in which to complete the bond hearing, or else release the petitioner.[2] *See, e.g.*, *Velasquez Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (collecting cases). The Court follows this consensus and orders the same remedy here.

### III.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**. The Court **ORDERS** that, <u>**on or before November 18, 2025**</u>, Respondents shall either: (1) provide Lala Barros with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Lala Barros' continued detention; or (2) release Lala Barros from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, <u>**on or before November 18, 2025**</u>, Respondents shall **FILE** notice informing the Court whether Lala Barros has been released from custody. If Lala Barros has not been released from custody, Respondents shall inform the Court whether and

---

[2] The Court takes judicial notice that at least one IJ in the El Paso area has apparently disclaimed jurisdiction to adjudicate bond hearings on the merits even when ordered to do so by a United States District Court. *See* Status Report, *Souza Vieira v. De-Anda Ybarra*, No. 3:25-cv-432-DB (W.D. Tex. Oct. 21, 2025), ECF No. 17. Again, the Court affords agency decisionmakers the opportunity to determine whether Lala Barros is a danger or flight risk. But if they decline that opportunity, then Lala Barros must be promptly released.

11

when a bond hearing was held in accordance with the preceding paragraph. Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

**There will be no extensions of the November 18, 2025, deadlines.**

**SO ORDERED**.

**SIGNED this 10th day of November, 2025.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE